**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| SYLVIA Z., | No. ED CV 19-14-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Sylvia Z.[1] ("plaintiff") filed this action on January 3, 2019, seeking review of the Commissioner's[2] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul, Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

a Magistrate Judge on January 31, 2019, and February 20, 2019. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on September 5, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1954. [Administrative Record ("AR") at 208, 210.] She has past relevant work experience as an administrative clerk. [Id. at 32, 45-47.]

Plaintiff protectively filed an application for a period of disability and DIB, and an application for SSI payments, on January 9, 2015, and January 15, 2015, respectively, alleging that she has been unable to work since February 28, 2013. [Id. at 19; see also id. at 208-09, 210-16.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 140-42.] A hearing was held on November 29, 2017, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 40-67.] A vocational expert ("VE") also testified. [Id. at 45-47, 63-66.] On February 2, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from February 28, 2013, the alleged onset date, through February 2, 2018, the date of the decision. [Id. at 19-34.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 204-06.] When the Appeals Council denied plaintiff's request for review on November 6, 2018 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

February 28, 2013, the alleged onset date.[3] [AR at 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease in the cervical spine; bilateral shoulder impingement; bilateral osteoarthritis of the knees; carpal tunnel syndrome; and obesity. [Id. at 22.] He also determined that plaintiff did not have a medically determinable mental impairment. [Id. at 23.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[5] as follows:

> [Can] lift and/or carry, push and pull twenty pounds occasionally and ten pounds frequently; can stand and/or walk for four hours in an eight-hour workday, for one hour at a time, then sit for a few minutes before standing and walking again; could sit for six hours in an eight-hour workday; can occasionally climb ramps and stairs but could not climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; could do frequent handling and fingering with bilateral upper extremities; and could do occasional above-shoulder work with bilateral extremities.

[Id. at 24.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as an administrative clerk. [Id. at 32.] He also determined that plaintiff had learned transferable skills in her past relevant work that would transfer to the job of receptionist, a sedentary position that requires occasional fingering bilaterally and frequent handling. [Id. at 33.] Accordingly, the ALJ determined that plaintiff was not disabled

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. [AR at 21.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

at any time from the alleged onset date of February 28, 2013, through February 2, 2018, the date of the decision. [Id. at 34.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) rejected the opinion of the consultative psychiatrist Ernest Bagner, M.D. and determined at step two that plaintiff did not have a medically determinable mental impairment; and (2) rejected plaintiff's subjective symptom testimony regarding fingering and handling limitations. [JS at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

**A.  THE ALJ'S STEP TWO FINDING**

**1.  Legal Standard**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). A medically determinable physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and will not be found based solely on the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. 404.1521 (eff. Mar. 27, 2017).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found

to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See Soc. Sec. Ruling ("SSR")[6] 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

### 2. Dr. Bagner and the State Agency Reviewing Doctors

On May 20, 2015, Dr. Bagner, the psychiatric consultative examiner, conducted a clinical interview and a mental status examination. [AR at 384-85.] He had no medical records to review. [Id. at 385.] He noted plaintiff's chief complaints of crying spells, difficulty falling asleep, fatigue, low motivation, anxiety attacks, and feelings of depression, as well as her physical complaints that she cannot stand for a long period of time, has arthritis in her knees, and is "falling apart." [Id. at

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

7

384.] Among other things, Dr. Bagner noted that plaintiff was tearful, cooperative, had normal body movements, had good eye contact, her speech was soft in tone and the rate of speech was slow and emotional, and she was alert and oriented to time, place, person, and purpose. [Id. at 386.] He reported that she was able to recall three out of three objects immediately, and one out of three objects in five minutes, she was able to perform serial sevens and serial threes, and was able to spell the word "music" forward and backward. [Id. at 387.] He diagnosed plaintiff with major depressive disorder, anxiety disorder, not otherwise specified, and panic disorder. [Id.] He found her mildly limited in her ability to follow simple, oral and written instructions, to interact appropriately with the public, co-workers, and supervisors, to respond to changes in a routine work setting, and in her daily activities. [Id. at 387-88.] He found her moderately limited in her ability to follow detailed instruction "due to difficulty with short-term memory," and in her ability to respond to work pressure "due to depression and low motivation." [Id.]

On August 17, 2015, the State Agency reviewing consultant, Pamela Hawkins, Ph.D., reviewed Dr. Bagner's evaluation and agreed with him that plaintiff was moderately limited in her ability to understand and remember detailed instructions, but found she has "sufficient ability to understand and remember simple and some 3-4 step tasks." [Id. at 86-87, 90.] On September 28, 2015, the State Agency reviewing consultant on reconsideration, Beth Klein, Ph.D., agreed with Dr. Hawkins, and also determined that plaintiff can maintain concentration, pace, and persistence for "simple and some 3-4 step tasks." [Id. at 113, 117.] Dr. Klein also noted that plaintiff "would be best suited to work with minimal social demands and limited public contact [and] [c]an interact adequately with peers/supervisors," and "can adapt to a low demand work setting consistent with simple and some detailed work. For greatest success, changes should be introduced gradually." [Id. at 117.]

The ALJ gave Dr. Bagner's opinion "little weight" and determined at step two that plaintiff did not have a medically determinable mental impairment:

> Although . . . Dr. . . . Bagner[] did diagnose [plaintiff] with major depressive disorder, anxiety disorder, and panic disorder, these findings are not reflected in the remainder of [her] medical record. As discussed in greater detail below, Dr. Bagner's opinion is given little weight for being inconsistent with the evidence in the record. Furthermore, [plaintiff's] "Anxiety [was] stable with Lorazepam 0.5 mg as

8

needed." [AR at 505, 510.] The manageability of [her] anxiety symptoms is supported by [her] frequent denial of the need to be seen by a psychiatrist and normal mood and affect during appointments. [AR at 501, 507, 514, 516.] Pursuant to SSR 96-4p, symptoms alone cannot establish the existence of an impairment, and [plaintiff's] record includes insufficient medically acceptable clinical or laboratory diagnostic techniques to support a finding of a medically determinable mental impairment.

. . . .

Dr. Bagner's opinion that [plaintiff] was not limited in her ability to comply with job rules and could manage her own funds is given great weight because it is consistent with the evidence in the record. For example, [plaintiff] reported that she was able to pay bills, count change, and handle a savings account, checkbook, and money orders. Additionally, [she] performed her physical therapy exercises as instructed, showing that she was able to comply with rules.

The remainder of Dr. Bagner's opinion is given little weight because it is not consistent with the evidence in the record. First, Dr. Bagner evaluated [plaintiff] just once and did not have an ongoing treatment relationship with [her]. Additionally, Dr. Bagner did not review [plaintiff's] medical records, but rather solely relied upon his own observations and [plaintiff] as the source of information. Moreover, Dr. Bagner's findings are not only internally inconsistent, but also inconsistent with the other evidence in the record. For example, [plaintiff] was cooperative during her examination, did not exhibit a disrupted thought process or thought content, and performed her serial sevens, which contradicts Dr. Bagner's opinion that [she] was limited in her ability to follow instructions. [Plaintiff] also demonstrated an ability to follow instructions by performing her home exercises. Similarly, [she] is not limited in her ability to interact with the public, co-workers, or supervisors, as demonstrated by her normal mood and affect during appointments and ability to carry a conversation with normal thought process. All of these findings show that there is insufficient objective evidence to support [plaintiff's] mental impairment as medically determinable.

[Id. at 22-23, 27-28 (citations omitted).]

With respect to the opinions of Dr. Hawkins and Dr. Klein, the ALJ found them also to be inconsistent with the evidence in the record and gave them "little weight":

First, [plaintiff] reported that she was able to pay attention for a good while and did not require reminders, contradicting the finding that she has moderate difficulties in concentration, persistence, or pace. Additionally, [plaintiff] was able to perform serial threes and serial sevens, again reflecting no limitations in this area. Further, [her] ability to successfully learn and perform her home physical therapy exercises reflects [her] ability to understand and remember instructions. Dr. Hawkins and Dr. Klein also did not have an ongoing treatment relationship with [plaintiff] or even evaluate [her] in person, so these opinions are given little weight.

[Id. at 28-29 (citations omitted).]

Plaintiff contends that although the ALJ rejected the opinion of Dr. Bagner as inconsistent with the evidence, "the decision to order a consultative examiners [sic] opinion is only triggered

when the record is inadequate to properly evaluate an impairment." [JS at 6.] She also argues that the ALJ's reliance on plaintiff's lack of psychiatric treatment to discount Dr. Bagner's opinion is a "questionable practice" with respect to "chastis[ing] one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." [Id. (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).] She contends that the ALJ's statement that "symptoms alone cannot establish the existence of an impairment, and [plaintiff's] record includes insufficient medically acceptable clinical or laboratory diagnostic techniques to support a finding of a medically determinable mental impairment" is "incorrect," because Dr. Bagner's "clinical interview and mental status evaluation are 'objective measures.'" [Id. (citing Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017)).] Plaintiff also notes that "neither Dr. Bagner nor the state agency doctors assessed any marked limitations that were internally inconsistent with Dr. Bagner's findings" and suggests that the ALJ's rejection of Dr. Bagner's "uncontroverted mental limitations appears conclusion driven as [plaintiff] would grid out if she had limitations in performing the mental demand of her past semi-skilled work." [Id. at 7 (citation omitted).] Finally, plaintiff states that the state agency doctors' findings that plaintiff could perform simple tasks with the ability to perform "some 3 and 4 step tasks" would limit plaintiff to reasoning level 2 jobs because at reasoning level 3 the individual would have to be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." [Id. at 7-8 (citations omitted).] Plaintiff submits that because she is "close to retirement age with a date of birth of . . . 1954," the Court should credit the mental limitations as true, apply grid rule 202.04, and award the payment of benefits. [Id. at 8.]

Defendant responds that the ALJ properly found Dr. Bagner's one-time examining opinion to be unsupported and inconsistent with plaintiff's lack of mental health symptoms or treatment. [Id.] Defendant notes that Dr. Bagner evaluated plaintiff "just once," reviewed no records, and his information about plaintiff's mental symptoms came solely from plaintiff's self-reports, all of which are valid reasons for the ALJ to discount the medical opinions. [Id. at 9 (citations omitted).] He also notes that the ALJ found that Dr. Bagner's opinion was both internally inconsistent and

inconsistent with other record evidence, which is also relevant to the weight given to a medical opinion. [Id. at 10 (citation omitted).] Defendant observes that the medical records reflected that plaintiff received no treatment from a mental health specialist, and that "the limited reference in the record to any mental symptoms or treatment showed that Plaintiff's anxiety was stable and a general practitioner prescribed Lorazepam to take 'as needed.'" [Id. at 11 (citing AR at 22, 505, 510).] In fact, as noted by the ALJ, plaintiff "frequently denied the need to be seen by a psychiatrist, and had normal mood and affect during appointments, which supported that her symptoms were well managed." [Id. (citing AR at 22-23, 501, 507, 514, 516).] Defendant further notes that plaintiff provides no support for her argument that an ALJ's decision to order a consultative examination is only made when the record is inadequate to evaluate an impairment and somehow undermines the ALJ's reasoning. [Id.] He states that "[f]ollowing Plaintiff's logic, an ALJ would never be permitted to find a consultative examiner's opinion inconsistent with the record, which clearly is false" because both the regulations and case authority support that inconsistency *is* a valid basis for giving an examining opinion less weight. [Id. (citations omitted).] Defendant also submits that the ALJ did not find that Dr. Bagner's examination did not contain objective evidence, just that in light of Dr. Bagner's minimal findings at his single examination and the record as a whole, there was insufficient evidence to establish a mental impairment. [Id. at 12.] Defendant notes that the state agency examiners found that even with a limitation to simple and some detailed tasks, plaintiff could still perform her past work. [Id. at 12-13 (citing AR at 92, 106).] Finally, defendant argues that plaintiff's argument that Dr. Bagner's finding of some moderate limitations meant that she could not perform jobs that are reasoning level 3 is "wholly unsupported." [Id.] That is because Dr. Bagner did *not* find plaintiff limited to 3 or 4 step tasks -- "that came from the State agency psychological consultants' opinions, which the ALJ rejected, a finding Plaintiff has not specifically challenged here." [Id.] Defendant states that even a restriction to "simple and some 3 or 4 step tasks" has "not been found to conflict with any particular reasoning level," as the Ninth Circuit "has only identified a possible conflict between a restriction to only simple, repetitive tasks (i.e., no detailed tasks) and jobs classified as reasoning level 3." [Id. (citing Zavalin v. Colvin, 778 F.3d 842 (9th Cir. 2015)).] Because neither Dr. Bagner's opinion

11

nor the state agency psychological consultants' opinions limited plaintiff to simple, repetitive tasks, there was no conflict in this case. [Id.]

Plaintiff reiterates that the ALJ failed to provide clear and convincing reasons for discounting Dr. Bagner's opinion and that the ALJ failed to consider even his non-severe limitations in assessing plaintiff's RFC, which, had they been properly considered, "would preclude the past semi-skilled work in this case." [Id. at 14 (citing SSR 96-8p).]

At step two, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov, 420 F.3d at 1004-05. In this case, the only evidence even potentially supporting a medically determinable mental impairment is Dr. Bagner's one-time limited evaluation, which was conducted without the benefit of any of plaintiff's prior medical records, and based solely on Dr. Bagner's own limited observations at the examination and on plaintiff as the source of the information. See 20 C.F.R. § 404.1527(c)(2) (length of treatment relationship, frequency of examination, kind and extent of examinations and testing performed, and relevant evidence (i.e., medical signs and laboratory findings) supporting an opinion are factors to consider in weighing a medical opinion).

The ALJ also determined that Dr. Bagner's opinions were both internally inconsistent and inconsistent with other evidence in the record. With respect to internal inconsistency, for instance, the ALJ noted plaintiff was cooperative during the examination, did not exhibit disruptive thought process or content, and performed serial sevens, all of which contradicted Dr. Bagner's opinion that plaintiff was limited in her ability to follow instructions. [AR at 28, 386-87.] Likewise, the ALJ found plaintiff was not limited in her ability to interact with others, as demonstrated by her normal mood and affect during appointments, and her ability to carry on a conversation with normal though process. [Id. at 28 (citing id. at 501, 507, 516, 540, 548).] With respect to inconsistency with the record generally, the ALJ found that Dr. Bagner's opinions were not reflected anywhere in the record. [Id. at 22-23.] Indeed, plaintiff testified that she is not getting any psychiatric treatment, her worker's compensation claim had no psychiatric component, she was "just taking anxiety pills, but that's real -- well, because I can't sleep sometimes," and she "sometimes" gets

depressed and wants to stay asleep in bed, especially when it is cold and she is in more pain. [AR at 50-54.] In her February 3, 2014, Adult Function Report, plaintiff noted that she can pay attention "for a good while," follows written instructions such as a recipe with help from her daughter, follows spoken instructions "well," and has no problem getting along with authority figures, but gets frustrated and anxious when she cannot do something for herself, and has the fear of not being able to pay her bills. [Id. at 243-49.] As noted by the ALJ, plaintiff's Lorazepam was prescribed "as needed" and, although there are a few notations in the record about plaintiff's anxiety being "stable" on Lorazepam, there are no records otherwise reflecting that plaintiff was suffering from a medically determinable mental impairment, let alone one that was severe and impacted her ability to perform work-related activities. Neither does plaintiff point to any such records and even her testimony fails to provide evidence of a medically determinable mental impairment: plaintiff received no treatment from a mental health specialist, her anxiety was stable, she denied the need to be seen by a psychiatrist, and she even testified that she was taking her anxiety medication just to help her sleep. These were appropriate reasons for discounting Dr. Bagner's opinions. See 20 C.F.R. § 404.1527(c)(3)-(c)(4) (supportability and consistency are factors relevant to the weight afforded a medical opinion).

In this case, other than the opinions of Dr. Bagner, Dr. Hawkins, and Dr. Klein, which the ALJ took into account and properly discounted, there simply is no evidence in the record that plaintiff's alleged anxiety or other mental impairments caused her *any* work-related limitations. Indeed, as plaintiff herself admitted, she was taking the prescribed anxiety medication to help her sleep [AR at 53]; she did not seek mental health treatment [id.]; and she did not provide any details or evidence supporting her alleged anxiety (or any other mental impairment) or limitations resulting therefrom. Under these circumstances, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Dr. Bagner's opinions regarding plaintiff's limitations (as well as the opinions of Dr. Hawkins and Dr. Klein that relied on Dr. Bagner's opinion) and in finding that plaintiff did not have a medically determinable mental impairment. Ukolov, 420 F.3d at 1005 ("regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically

determinable . . . mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings"); Biestek, 139 S. Ct. at 1154.

Plaintiff has not met her burden at step two. Remand is not warranted on this issue.

**B. SUBJECTIVE SYMPTOM TESTIMONY**

**1. Legal Standard**

Prior to the ALJ's assessment in this case, SSR 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[7] SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the

---

[7] SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen, 80 F.3d at 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective

symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements." SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014). In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." Id. "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. Id. at *9. The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or

improve with time. Id.

### 2. Analysis

Plaintiff contends the ALJ failed to articulate clear and convincing reasons for rejecting plaintiff's testimony regarding the pain and limitations she experiences due to her carpal tunnel syndrome. [JS at 16.]

With respect to plaintiff's carpal tunnel syndrome, the ALJ noted the following:

> During the hearing, [plaintiff] alleged limitations in her manipulation and fingering, including an estimate that she could only type for fifteen to twenty minutes at one time. However, [plaintiff] admitted that she had not typed in a while, detracting from the accuracy of her estimation. Although [she] did exhibit positive signs and symptoms of carpal tunnel, she did not require more restrictive limitations. In fact, Dr. Solomon opined that [her] alleged symptoms cannot be fully explained by [her] bilateral carpal tunnel. [Her] nerve conduction velocity studies revealed that although [her] sensorimotor latencies of the bilateral median nerves were prolonged, [she] did not have a drop in the amplitudes of the motor and sensory latencies in all her upper extremity nerves nor did she have a noted delay in her bilateral nerve conduction velocity studies. Additionally, [her] needle electromyography in her bilateral upper extremities revealed no increase in membrane instability and no abnormal MUAP findings. Although [she] exhibited some signs of bilateral carpal tunnel syndrome, [plaintiff] had a full range of motion in her left wrist but a reduced range of motion in her right wrist with pain. [Plaintiff] did maintain a mostly full bilateral wrist grip and had normal motor strength in her upper extremities. [She] remained able to make a complete fist and extend all of her digits, had a normal range of motion in her fingers, and did not display muscle atrophy. Based on the medical evidence, [she] remains able to frequently handle and finger with her bilateral upper extremities.

[AR at 27 (citations omitted).]

Plaintiff states that she testified that she "could type for maybe 15-20 minutes and then she would need to stop and rest for 10 minutes"; and that she could sometimes tie her shoes and button her buttons, "but not always." [JS at 16 (citing AR at 59).] She notes that although the ALJ stated that an EMG did not show evidence of cervical radiculopathy that would explain her complaints of "pain, numbness, and tingling that radiated from her hands to her neck" [id. (citing AR at 26)], "the ALJ failed to note that the examiner that reviewed the EMG did not rule out cervical radiculopathy," which was "still suspected." [Id. (citing AR at 516-17).] She also states that the EMG findings were supported by the objective findings of a positive grind test and positive Finkelstein's test. [Id.] Plaintiff argues that if she could not perform the "frequent fingering of her

past work as an administrative assistant she would grid out under grid rule 202.04, unless the Commissioner could show that [she] had transferable skills to a significant range of work," but the ALJ only identified one job that plaintiff "would have transferable skills to with a limitation to only occasional fingering," which is "insufficient." [Id. (citing Lounsberry, 468 F.3d at 1115).] Plaintiff argues that the ALJ's stated reasons for rejecting her subjective symptom upper extremity limitations were not supported by the record, as evidenced by his statement that "the EMG was not positive for cervical radiculopathy," despite the fact that the EMG showed she has carpal tunnel syndrome, along with a positive Tinel's test and Finkelstein's test. [Id. at 21 (citing AR at 26, 337).] Plaintiff also states that the evidence shows that "at times [she] could not move her fingers due to pain," and that treatment notes show that she had "tenderness to palpitation [sic] of the wrist and decreased range of motion of the writs [sic] with reduced grip strength." [Id. (citing AR at 548).] She also points to a treatment note that purportedly "document[s] the frequently [sic] and severity of [her] wrist pain as frequent moderate pain." [Id. (citing AR at 488).[8]]

Defendant responds that the ALJ reasonably found that plaintiff's carpal tunnel pain was under control with her pain medication and physical therapy. [Id. at 18 (citing AR at 25).] Additionally, the ALJ acknowledged that plaintiff had not had surgery due to her fear it might make her worse, but properly relied on the fact that she had even declined a carpal tunnel injection in January 2017 without providing a reason. [Id. (citing (AR at 26, 52-53, 517).] Defendant also notes that the EMG report relied on by plaintiff [AR at 516-17], specifically points out that plaintiff's complaint of "radicular pain extending up to her neck," i.e., cervical radiculopathy, is *not* explained by the EMG results, which show only bilateral carpal tunnel syndrome, and which "cannot explain her full symptoms." [JS at 19 (citing AR at 516).] Defendant observes that there was no doctor who assessed *any* manipulative limitations. [Id. at 20 (citing AR at 29-31).]

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting plaintiff's testimony regarding her carpal tunnel symptoms and limitations. First, plaintiff's

---

[8] The treatment note plaintiff cites to, however, is a lab report reflecting blood test results and has nothing to do with wrist pain. [See AR at 488.]

speculation regarding how long she might be able to type at one time without resting, and her testimony about sometimes not being able to tie her shoes or button her buttons, did not warrant any more restrictive limitation in fingering than that found by the ALJ,[9] and plaintiff did not point to any evidence supporting a more restrictive limitation. Indeed, plaintiff's carpal tunnel syndrome was controlled by medication (Naproxen) and physical therapy [see, e.g., AR at 59 (stating that when the pain starts in her hands she does her "exercises" to relieve it), 63, 311], and although an injection had been recommended, plaintiff declined that treatment without explanation. [Id. at 26, 517]; Tommasetti, 533 F.3d at 1039 (when evaluating symptoms, the ALJ can consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"). Accordingly, this was a specific, clear and convincing reason supported by substantial evidence to discount plaintiff's subjective symptom testimony. Second, plaintiff's argument that the ALJ erred because he failed to identify more than one job that she would be able to perform based on her transferable skills is without merit. [JS at 16 (citing Lounsberry, 468 F.3d at 1115).] As best as the Court can glean, plaintiff appears to be referencing the holding in Lounsberry that "[i]f a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled." Lounsberry, 468 F.3d at 1115 (citation omitted). However, that holding does not mean that there must be a significant number of *different* jobs that a claimant is able to perform, only that the job (or jobs) that the ALJ finds a claimant is able to perform is *itself* available in significant numbers in the national economy. In this case, the VE testified that there were 210,000 nationwide positions available for the receptionist occupation, which requires only occasional fingering. [AR at 46.] This number is considered significant.

---

[9] Plaintiff's hearing testimony and arguments appear to relate primarily to her ability to engage in bilateral fingering tasks (i.e., typing, buttoning, tying shoelaces). Plaintiff's past relevant work as an administrative clerk requires frequent handling and fingering, i.e., from 1/3 to 2/3 of the time. See Dictionary of Occupational Titles ("DOT") No. 219.362-010. Here, the ALJ also determined that plaintiff's skills learned from her past relevant work as an administrative clerk would be transferable to the position of receptionist, DOT number 237.367-038. [AR at 33, 46-47.] The VE testified that the receptionist position requires only occasional bilateral fingering (i.e., up to 1/3 of the time) and frequent bilateral handling, and is a semi-skilled sedentary job with 210,000 jobs available nationally. [Id. at 46-47.]

Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (holding that 25,000 jobs nationwide constitutes a significant amount of work in the national economy). Thus, the ALJ's error, if any, in finding plaintiff capable of performing frequent fingering, was harmless.

Remand is not warranted on this issue.

**VI.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 22, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE